UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DAVID RAMOS, Individually, and ) <br> d/b/a TAQUERIA MI TIERRA, ) <br> a/k/a MI TIERRA TAQUERIA ) <br> ) <br> Defendant. ) <br> _____) | NO. 12-CV-086-JLQ <br><br> **ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT** |

BEFORE THE COURT IS Plaintiff's Motion for Default Judgment (ECF No. 16), to which there has been no response.

## I.   BACKGROUND

### A.   Procedural History

Plaintiff filed the instant action on February 6, 2012, asserting violations of (1) the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605; and (2) the Cable & Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553.  The Proofs of Service indicate the Defendant was personally served at his business site, 112 S. Ash St., Moses Lake, WA., on February 18, 2012. (ECF Nos. 7, 8).  Plaintiff moved for entry of a Clerk's order of default, which the court denied because the request failed to comply with Local Rule 55.1 concerning Notice to the Defendant.  An Amended Motion was filed on May 23, 2012 and the Clerk's Order of Default was entered on May 24, 2012 (ECF No. 15).

ORDER – 1

**B.    Factual History**

Plaintiff J&J Sports Productions, Inc ("Plaintiff") is a distributor and licensor of certain closed circuit and pay-per-view sports and entertainment programming. By contract, Plaintiff was granted the nationwide commercial distribution rights for the live telecast of the Manny Pacquiao v. Shane Mosley WBO Welterweight Championship Bout, along with undercard bouts,  on May 7, 2011 (the "Program"). Plaintiff then entered into sublicenses with third parties allowing them to exhibit the Program to their patrons.  The Program was broadcast by means of encrypted satellite signal.

On May 7, 2011, the Program was allegedly intercepted and exhibited by the Defendant at his restaurant, Taqueria Mi Tierra at  112 S. Ash St. in Moses Lake, Washington, without a contract with the Plaintiff.   Plaintiff's Motion for Default Judgment is accompanied by the Affidavit of Joseph Gagliardi, Plaintiff's President, which includes both the distributorship agreement and rate card for the program at issue.  (ECF No. 17). Plaintiff asserts that had the Defendant wished to legally broadcast the Program the cost would have been $4200, a rate for commercial public viewing based upon fire code occupancy of 51-100.

Plaintiff hired a private investigator, Kim Long, who was present on the evening of the fight, May 7, 2011, in Defendant's establishment and saw the first round of one of the undercard bouts (Alvarado v. Nahr) of the Program being transmitted on four television sets in the three dining areas. (ECF No. 17, Ex. C (Affidavit of Kim Long)).  The investigator observed there was no cover charge to enter the establishment and there was a DISH receiver visible.  *Id*. The investigator was unable to observe the fire code occupancy, but estimated the capacity to be in the range of 50-100.  *Id*.

Plaintiff has also submitted video recordings made by the investigator from the vantage point of the first dining area (primarily from under her table), looking into the second dining area toward a television sitting in the room's corner.  (ECF

ORDER – 2

No. 17, Ex. D). The video footage documents fewer than 10 other patrons in the establishment and does not show the alleged "upstairs banquet room" of the "one-story building." The video captured a Hitachi flat screen television displaying the "pay per view" warning/order screen with a listed screen price of $54.99 and then restaurant staff turning off the tv, grabbing a cable from behind the television, working behind the television, and turning the television back on, at which time the Program appeared on the screen. The investigator's Affidavit states: "Rodrigo unplugged Hitachi from Dish receiver and connected tv to another cable showing fight." ( ECF No. 17, Ex. C).

## II.   LEGAL STANDARD

Fed.R.Civ.P 55(b)(2) permits a court, following an entry of default, to enter default judgment against a defendant. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980). In considering whether default judgment is appropriate, the following factors are considered:

> (1) [T]he possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986).

## III.   DISCUSSION

**A.   Merits of the Substantive Claims and Sufficiency of the Complaint**

Upon default the factual allegations of the complaint, "except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (*citing Pope v. United States*, 323 U.S. 1 (1944). In the Complaint, Plaintiff seeks statutory damages (as opposed to actual damages) pursuant to 47 U.S.C. § 605 or alternatively, 47 U.S.C. § 553. Plaintiff also seeks enhanced damages with respect to both these provisions. Sections 553 and 605 are similar in that they both prohibit the unauthorized display of television

ORDER – 3

programming. Section 553, however, applies exclusively to broadcasts over a cable system, whereas § 605 applies to intercepted "radio" communications or broadcasts through the air, such as transmissions over satellite television.

The Complaint alleges both the interception by means of an "illegal satellite receiver"and, alternatively, over a cable system, however on the instant Motion for Default Judgment, Plaintiff concedes that without discovery it cannot determine the precise means that Defendant used to receive the Program.  Plaintiff contends that as the Defendant has failed to respond to the Complaint, Defendant can be held liable under either Count alleged in the Complaint, and it is thus "elect[ing] to recover" under 42 U.S.C. § 605.  Notably, § 605 offers greater potential damages than § 553.

Section 605 allows the court to award statutory damages between $1,000 and $10,000 for each violation (§ 605(e)(3)(C)(i)(II)). The court may increase its award by not more than $100,000 when the violation has been "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii).  Under § 553, a court may award statutory damages of "not less than $250 or more than $10,000 as the court considers just."  47 U.S.C. § 553(c)(3)(A)(ii). The court may enhance the award for a willful violation "by an amount not more than $50,000." 47 U.S.C. § 553(c)(3)(B).  Under both provisions costs and attorneys fees are recoverable, although the award is mandatory under § 605 and discretionary under § 553. *See* 47 U.S.C. § 605(e)(3)(B)(iii); 47 U.S.C. § 553(c)(2)(C).

Plaintiff's application for default judgment contends that Defendant's violation of 47 U.S.C. § 605 et seq. was willful and that this court should enter default judgment in the amount of the statutory maximum ($10,000),  plus $25,000 in enhanced damages, plus $2,891.25 for attorneys fees and costs for a total award of $37,891.25 and post-judgment interest.

ORDER – 4

A number of district courts ruling on cases wherein Plaintiff has undertaken a similar approach –  in an instance where Plaintiff was unable to determine the means by which the violation occurred -- have rejected the notion that Plaintiff may elect which statute to apply.  Instead, these courts have concluded that Plaintiff "must allege facts sufficient to establish interception by satellite in order to receive an award under 47 U.S. § 605."  *J & J Sports Productions, Inc. v. Aviles*, 2011 WL 3652621 at *1 (N.D.Cal., Aug. 19, 2011); *See also*, J & J Sports Prods. Inc. v. Ro, 2010 WL 668065 (N.D.Cal. Feb.19, 2010); *J & J Sports Prods. Inc. v. Guzman*, 2009 WL 1034218 (N.D.Cal. April 16, 2009); *J & J Sports Prods. Inc. v. Manzano*, 2008 WL 4542962 (N.D.Cal. Sept.29, 2011); *J & J Sports Prods Inc v. Ayala*, 2012 WL 4097754 (N.D.Cal. September 17, 2012).  Where there were insufficient facts to establish interception by means of a satellite, but sufficient that Defendant intercepted the broadcast by *some* means, and a cable box is hidden more easily than a satellite dish, these courts have concluded that a permissible inference can be drawn with respect to the violation of § 553, and damages under this section were more appropriate in this circumstance.

Other district courts have concluded that award of damages was appropriate under 47 U.S.C. § 605, even though the investigator could not determine the precise means the Defendant used to obtain the program.  *See e.g.*, J & J Sports Prods. Inc. v. Marcaida,2011 WL 2149923 (N.D.Cal. May 31, 2011).

It makes no difference in this case which statute is applied, because the court has determined that the amount of statutory and enhanced damages the court considers just are within the range provided for by both § 605 and § 553.  The court does note that the investigator witnessed and videoed a DISH (Network) receiver, which the court recognizes utilizes satellite technology.  Accordingly, with some reservation, the court will proceed under the purview of § 605 as requested by Plaintiff without resolving the dispute as to which statute is most appropriate in these circumstances.  The facts in the Complaint are adequately well-pled to support

ORDER – 5

an entry of default judgment, but not to support the full amount of damages Plaintiff requests.

**1.    Statutory Damages**

Plaintiff contends the maximum amount of statutory damages ($10,000) is necessary to deter future violations.

The Affidavit of Plaintiff's President asserts the commercial rights for the fight would have cost $4500, the rate for a fire code occupancy of 51-100. The rate card states that the rate for a fire code occupancy of less than 51 would be only $2200. The auditor's "X" mark next to the estimated capacity of "50-100" in her Affidavit does not constitute sufficient evidence to establish the $4500 rate should be applied. Notably, the investigator utilized a check-box form Affidavit obviously specifically formatted and utilized for use in this type of litigation. The form Affidavit notably <u>does not even contain an option for the investigator to indicate an estimated capacity of less than 50</u>. The investigator indicates she did not view the fire code occupancy. Given these facts, the fact that no head count was performed, and the video footage submitted, the evidence only establishes the rate for this Defendant would have been $2200.

The court has compared the awards from numerous other cases, including Judge Illston's award of $5400 for the interception of the identical Program involved in this case in *J & J Sports Productions, Inc. v. Parayno*, 2012 WL 3277279 (N.D.Cal. August 10, 2012)(discussed below). *See also, G & G Closed Circuit Events, LLC v. Thao Xuan Vo*, 2012 WL 899955 (awarding $2400 in statutory damages for Defendant's default when plaintiff presented evidence where the establishment served twenty persons); *Joe Hand Promotions, Inc. v. Dang*, 2011 WL 6294289 (N.D.Cal. Dec.14, 2011) (awarding $7000 in statutory damages for Defendant's default when the plaintiff presented evidence where the establishment served thirty-five (35), thirty-seven (37), and thirty-nine (39) persons during the headcounts—and the Program was shown on twelve (12) televisions.)

The court finds an award of $2200.00 in statutory damages appropriate.

## 2. Enhanced Damages

The court recognizes that there are some district courts (cases cited in Plaintiff's memorandum) which have found that the mere act of intercepting an encrypted signal constitutes wilfulness, justifying substantial enhanced damages. However, numerous other courts (not cited by Plaintiff) have declined to award substantial or any enhanced damages with facts more egregious to the present case. One such case in the Northern District of California involved a restaurant and the identical Pacquiao/Mosley fight involved in the case at hand. *See, J & J Sports Productions, Inc. v. Parayno*, 2012 WL 3277279 (N.D.Cal. August 10, 2012). In *Parayno*, although there was a $20 cover charge, there was no indication of whether the establishment had advertised, a head count of the number of patrons present was only 30, and the match was shown on a "large projector on the back wall." *Id*. at *1. On a motion for default judgment, Judge Illston awarded statutory damages to J&J Sports Productions in the amount of $5200 rejecting its request for enhanced damages in the amount of $110,000 because the record did not reflect factors demonstrating more egregious wrongdoing such as the repeated violation of the Act, intent to profit from the violations and actual profit derived from the violation. *Id*. at *2.

The facts of record against this apparently small town restaurant are not egregious. There was no cover charge. There was no projector screen. There is no evidence of repeated violations. Two of the televisions including in the investigator's count were very small old-style CRT televisions mounted high in the corners of the virtually unoccupied first dining room. There is no evidence as to whether the alleged "upstairs banquet room," where a "LG big screen" was allegedly located and displaying the Program, was in use. Notably, there was no head count performed by the investigator. The video footage evidences the Program was being viewed by patrons on one television and less than ten patrons in the establishment.

ORDER – 7

There is no evidence the Defendant advertised, or intended to profit, or derived actual profit from the violation.  Beyond the mere fact of the violation, Plaintiff offers no other justification or fact-specific analysis for an award of enhanced damages. However, the facts before the court establish a wilful violation that warrants the award of $1,500 enhanced damages as punishment and as a deterrent to further violations.

### 3. Costs and Fees

Costs and reasonable attorney's fees are also recoverable, and Plaintiff requests $2,191.25 in attorney's fees.  Plaintiff's attorney submitted a sworn Affidavit detailing rates ($250/hr for attorney time and $75/hr paralegal time) and itemized hours expended.  The court notes Plaintiff routinely files these sorts of lawsuits and the pleading and motions filed in this case are for the most part, boilerplate documents used in this type of action. Plaintiff's attorneys fees request also appears to reflect this. The only task billed for having demanded in excess of one hour was preparation of the instant Motion for Default Judgment.  The court finds the amount of the attorney's fees request reasonable.

Plaintiff also requests $700 in costs for filing fees and service of process. Plaintiff is granted $700 in costs.

## B.   Remaining *Eitel* Factors

The remaining *Eitel* factors favor entering default judgment in favor of Plaintiff.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff's Motion for Default Judgment (**ECF No. 16**) and for attorney's fees and costs is **GRANTED**.  Plaintiff shall recover: $2200 in statutory damages; $1,500 in enhanced damages; $2,191.25 in attorney's fees, and $700 in costs, for a total of $6,591.25.  The Clerk of the Court shall enter **JUDGMENT** against the Defendant David Ramos in favor of the Plaintiff

ORDER – 8

accordingly, furnish copies to counsel, and **CLOSE THE FILE**.

**IT IS SO ORDERED.**

DATED this 1st day of October, 2012.

                s/ Justin L. Quackenbush
                JUSTIN L. QUACKENBUSH
      SENIOR UNITED STATES DISTRICT JUDGE